IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Susan Catherine Hagerman, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:13-1709-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on December 23, 2014 recommending that the Commissioner's decision be affirmed. (Dkt. No. 20). The Plaintiff filed objections to the Magistrate Judge's Report and Recommendation and the Commissioner filed a reply. (Dkt. Nos. 22, 23). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically

determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work . . . ." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." SSR 96-8p, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. This includes the duty to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of

treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The Commissioner has recognized that there are potentially disabling conditions, such as chronic pain, in which there may be little objective medical evidence to support the claimant's assertion of disability. Under such circumstances, the Commissioner is obligated to assess the credibility of the claimant and to look for other types of evidence in the record to evaluate the degree of impairment actually experienced by the claimant. SSR 96-7p, 1996 WL 374186 (July 2, 1996). One area of appropriate inquiry by the Administrative Law Judge ("ALJ") when assessing the credibility of a claimant's complaints of chronic pain is the medical treatment history of the claimant, which is based on the premise that if the medical condition was as

disabling as asserted one would expect him or her to seek and receive extensive medical treatment. Social Security Rules make it abundantly clear, however, that before an ALJ can draw any inference from a claimant's lack of medical treatment, the adjudicator must consider whether there is some alternative explanation for the absence of a significant treatment history, most notably whether the claimant "may be unable to afford treatment or may not have access to free or low-cost medical services." *Id.* at *7-8. Another issue the adjudicator must consider is whether the absence of the medical treatment is the result of the claimant being advised that there was no further effective treatment for the condition. *Id.* at 8.

## Factual Background

Plaintiff filed her application for disability with the Social Security Administration nearly six years ago. Her initial denial of disability by the Commissioner was reversed and remanded by this Court on the motion of the Commissioner for further proceedings before the ALJ. Transcript of Record ("Tr.") 604-07. The matter now returns on a second appeal in which Plaintiff asserts that her multiple physical and mental impairments render her disabled under the Social Security Act. The Commissioner recognizes that Plaintiff, in fact, suffers from a broad range of severe mental and physical impairments, but has found that she possesses the capacity for less than the full scope of sedentary work, the lowest level of work capacity that would still result in a finding that a claimant is not disabled. Tr. 567, 570.

The record before the Court documents a long history of significant physical and mental health challenges of the Plaintiff. These include a history of documented depression and treatment since age 21 and significant gastrointestinal surgeries and associated chronic and severe pain since her mid twenties. Tr. 280, 281, 284, 337-38, 339, 340, 359, 354, 362, 379, 380,

381-82, 398, 403, 404, 409, 413, 415-16, 417, 433, 470, 513-14, 521, 560. Plaintiff's mental health impairments have included diagnoses for major depressive disorder, obsessive compulsive disorder, agoraphobia, and anxiety disorder. Tr. 398, 400, 403, 409. Her depression related symptoms would vary from time to time, with symptoms of tearfulness and social isolation becoming more pronounced when exacerbated by stressors in her life. Tr. 398, 402, 403, 404, 407, 469, 470, 559. Plaintiff's chronic pain also was thought by her treating physicians to aggravate her psychiatric condition and she was diagnosed with depression related pain syndrome. Tr. 556, 560. She was diagnosed in 2010 with fibromyalgia that was described by one treating physician as "uncontrolled." Tr. 513-14, 518-19. Plaintiff reported to her psychiatrist that her excessive sleeping during the day was due to the fact that sleep was her only escape from her severe pain. Tr. 560.

Plaintiff's mental and physical impairments were also exacerbated by her lack of full access to medical care and treatment. She reported to her psychiatrist that she was unable to afford the prescribed level of Neurotin, a pain medication, and the free clinic would only dispense the medicine to her at doses that were not therapeutic. Tr. 560. Plaintiff's primary care physician noted that her situation was "very complicated" because she had "no job, no money, pursing disability, can't afford meds/visits" and had been going "from one free clinic to another over the past few yrs." Tr. 522, 526.

Plaintiff has been under the care of an ob-gyn, Dr. Katharine White, for over a decade. Dr. White's treatment has included an exploratory laparotomy in 2002 to address chronic pain, and she diagnosed Plaintiff with pelvic pain secondary to endometriosis in 2006. Tr. 414-416, 428-431. Plaintiff was examined by Dr. White on April 23, 2009 for a recent worsening in her

pelvic pain symptoms, which Dr. White documented was "debilitating pain" that had made the patient unable to "participate in her daily activities." Tr. 413. Dr. White discussed with Plaintiff during that visit the potential need for further surgery to address her chronic pain symptoms. Tr. 413. On the same date of the April 2009 office visit, Dr. White hand wrote a "To Whom it May Concern" note regarding Plaintiff's condition, referencing the patient's long history of endometriosis and the recent recurrence of debilitating pain. Dr. White opined that this chronic pain condition prevented Plaintiff "from working or participating in daily activities" and recommended that she undergo a hysterectomy because she was "unable to tolerate medical therapy." Tr. 511.

The ALJ conducted an administrative hearing in this matter in January 2013, following remand from the District Court. Plaintiff testified regarding her physical and mental impairments. Tr. 580-93. A vocational expert also testified and was propounded a hypothetical question by the ALJ that assumed that Plaintiff was limited to sedentary work and had other limitations on her employment related to her physical and mental impairments. The vocational expert opined that there were jobs in the national economy available to Plaintiff despite her severe impairments. Tr. 596-98. The vocational expert noted, however, that if Plaintiff's impairments resulted in two or more absences per month all potential jobs would be eliminated. Tr. 598.

The ALJ issued her decision in this matter on February 22, 2013 and denied Plaintiff's claim of disability. As mentioned earlier, the ALJ did find that Plaintiff was limited to less than the full scope of sedentary work, the lowest level of performance possible under the Social Security Act that would still render the claimant not disabled. Tr. 570. In reaching that

conclusion, the ALJ gave "little weight" to the 2009 opinion of Dr. White, finding (erroneously) that she had last seen Plaintiff in 2006 and her "limited contact with the claimant renders her opinion regarding the claimant's functionality less persuasive." Tr. 574. The ALJ gave "some weight" to the opinions of the non-examining and non-treating psychological experts, but gave "little weight" to their opinion that Plaintiff would occasionally miss a day of work because of her pain and psychological symptoms. The ALJ dismissed the opinions regarding potential absences of the non-examining and non-treating experts because they were "vague", Plaintiff allegedly had "benign mental status examinations" and received only "conservative treatment" for her symptoms. *Id.* The ALJ also was dismissive of the Plaintiff's complaint of chronic pain from fibromyalgia, indicating that the "medical record is devoid of any evidence showing the claimant subsequently sought significant treatment for her fibromyalgia pain." Tr. 572.

## Discussion

It is important to note at the outset what this case does not involve. There is not a dispute over whether Plaintiff's claimed mental and physical impairments are genuine or that her ability to function in the workplace is not profoundly limited by these multiple and severe impairments. The issues in dispute between the ALJ and the Plaintiff are exceedingly narrow, and an error by the ALJ in inappropriately weighing or considering some piece of material evidence could well tip the balance between disability and non-disability. Thus, the Court's duty on review is to confirm adherence to the legal standards controlling Plaintiff's disability claim and to confirm there is substantial evidence to support the findings of the agency. As discussed below, the Court finds multiple legal errors in the decision of the ALJ that mandate, individually and collectively, reversal of the agency decision.

A.   **The limited weight given the opinions of Dr. Katharine White, Plaintiff's serving specialist treating physician, violated the Treating Physician Rule and is not supported by substantial evidence.**

The ALJ, in finding that Dr. White's opinions were entitled to only "limited weight", stated that the physician's 2009 letter finding Plaintiff was physically incapable of work was based on stale information since Dr. White allegedly had "last examined the claimant in March 2006." Tr. 574. The record clearly establishes, however, that Plaintiff was examined by Dr. White on April 23, 2009, which is documented in a three page office note. Tr. 433-35. Thus, the ALJ's finding that Dr. White had not examined the Plaintiff since 2006 when issuing her 2009 opinion is not supported by substantial evidence and, this alone, mandates reversal since the Commissioner is obligated to consider "every medical opinion" and all medical evidence in adjudicating a disability claim.[1] 20 C.F.R. § 404.1527(a)(2), (c). Moreover, the opinions of treating physicians must be evaluated under the standards set forth in the Treating Physician Rule, including such factors as the physician's treating history, examining history and whether the physician is a specialist. *Id.* § 404.1527(c)(1)-(5). The ALJ's decision does not reflect any consideration of Dr. White's opinions under the standards of the Treating Physician Rule. On remand, Dr. White's opinions should be clearly weighed and analyzed under the standards of the Treating Physician Rule.

---

[1] The April 23, 2009 office note contains highly probative information concerning Plaintiff's condition, including Dr. White's finding of "debilitating pain" that interfered with Plaintiff's daily activities and need for further surgical intervention. Tr. 433-35. This overlooked information needs to be carefully considered on remand in weighing Dr. White's opinions and in determining Plaintiff's claim of disability.

-9-

B.  **The ALJ's finding that Plaintiff's credibility regarding her complaints of fibromyalgia pain was diminished because of the claimant's failure to seek "significant treatment" for the condition failed to comply with the requirements of SSR 96-7p that the adjudicator determine if the lack of medical treatment was the result of the claimant's inability to afford such treatment.**

The ALJ questioned the seriousness of Plaintiff's complaints of fibromyalgia pain because of her alleged failure to seek out "significant treatment." Tr. 572. SSR 96-7p makes it clear that an adjudicator "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record . . . ." 1996 WL 374186 at *7. Among the factors the ALJ is directed to consider is whether the claimant "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at *8. As the Fourth Circuit noted in *Lovejoy v. Heckler*, 790 F. 2d 1114, 1117 (4th Cir. 1986), "a claimant may not be penalized for failing to seek treatment she cannot afford."

The record reflects no inquiry during the administrative hearing by the ALJ about the Plaintiff's ability to afford treatment for her fibromyalgia pain. The record does, however, contain multiple entries by treating physicians that Plaintiff's medical treatment was complicated by her lack of access to medical care and lack of financial resources. Tr. 522-23, 526, 560. This includes the discussion in an office note of April 7, 2010 regarding Plaintiff's inability to afford the medication dosage prescribed for her fibromyalgia pain, Neurotin. Tr. 560.

The failure of the ALJ to consider alternative explanations for Plaintiff's failure to pursue "significant treatment" for her fibromayalgia pain, as mandated by SSR 96-7p, clearly requires

reversal of the ALJ's decision. On remand, the ALJ should consider all factors set forth in SSR 96-7p if she continues to question Plaintiff's credibility regarding her fibromyalgia pain on the basis that she had not sought significant medical treatment.

### C. The ALJ's decision to give "limited weight" to the opinions of non-examining and non-treating psychological experts on the issue of Plaintiff's likely absences from work because such opinions were allegedly "vague" was improper because the ALJ was obligated to correct any significant gaps in the record and develop a full and fair record.

The ALJ found that most of the opinions of two non-examining and non-treating psychological experts, which concluded that Plaintiff's mental impairments only moderately interfered with Plaintiff's ability to function in the workplace, were entitled to "some weight". Tr. 574. However, the ALJ selected out a single opinion from each expert's report that she elected to give "little weight", which involved the opinion that Plaintiff's impairments would result in Plaintiff occasionally missing a day of work. Tr. 455, 500, 574. Among the reasons given for giving "little weight" to this single opinion in the two reports was that it was "vague", not supported by Plaintiff's mental exams and the conservative treatment she had received for her condition. Tr. 574.

It is important to note that this seemingly small point may be critically important to the outcome of this case. The vocational expert testified that Plaintiff would not have jobs available in the national economy if she missed two or more days per month because of her impairments. Tr. 598. The record is not clear if "occasional" absences projected by the non-examining and non-treating psychological experts would most probably amount to at least two absences per month. Since this is a potentially outcome determinative issue and the Commissioner has the burden to prove the availability in jobs in the national economy for which Plaintiff could

perform, the ALJ was obligated to clarify that significant gap or deficiency in the record so as to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1981). While the ALJ's duty to complete a full and fair record is heightened when the claimant is *pro se*, the "duty exists even when the claimant is represented by counsel." *Rivera v. Astrue*, C.A. No. 10-cv-4324, 2012 WL 3614323, at *12 (E.D.N.Y. 2012). It is not sufficient to ignore these potentially critical opinions on the basis that they were "vague."

On remand, the ALJ is directed to communicate with the non-examining and non-treating experts and perhaps others to address the issue of whether Plaintiff's physical and mental impairments would most probably result in at least two absences per month from the workplace. Based on the record before the Court, an affirmative finding on this issue would mandate a determination of disability. Additionally, the ALJ on remand should reexamine the record to determine if her finding that Plaintiff's mental health examinations were "relatively benign" is supported by substantial evidence and whether the finding regarding "conservative treatment" may require consideration of issues under SSR 96-7p. Tr. 574.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g). In light of the protracted nature of these proceedings, dating from 2009, the Commissioner is directed to conduct the administrative hearing in this matter within 90 days of this order and to have the decision of the ALJ issued within 120 days from this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

January 22, 2015
Charleston, South Carolina